E-FILED
Friday, 01 November, 2019 11:37:27 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| WALTER SMITH, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) No.: 19-cv-1269-JBM |
| | ) |
| . ROSE et al., | ) |
| | ) |
| **Defendants.** | ) |

## MERIT REVIEW

Plaintiff, proceeding *pro se* and currently incarcerated at the Hill Correctional Center ("Hill"), pursues a § 1983 action alleging failure to protect and deliberate indifference to his serious medical needs at the Pontiac Correctional Center ("Pontiac"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

On August 18, 2017, Plaintiff was being escorted to the healthcare unit by Defendant Officers Rose and Slaton so he could receive an insulin injection. Plaintiff was restrained with Defendant Rose behind him and Defendant Slaton in front, holding the lead cuff. As they neared the cell of another inmate, Plaintiff observed that the inmate was holding a cup outside of his cell

1

and stopped short. Defendant Rose, however, instructed him to proceed. As the three walked by the cell, a hot liquid was splashed on them. Plaintiff claims that it hit the left side of his neck, face and shoulder causing a burning sensation. The Officers were also hit, and Defendant Slaton called Defendant Lieutenant Evans, informing her of the event. Lieutenant Evans responded and, using paper towels, wiped Plaintiff's face. Lieutenant Evans thereafter took Plaintiff to the nurses' station, informing Nurse Paul that Plaintiff had had a hot liquid thrown on him.

Plaintiff indicates that once at the nurses' station, Defendant Nurse Paul administered the insulin shot. Plaintiff claims, however, that although his eyes and skin were burning, Nurse Paul left the room, stating that he was only there to give out insulin. In the meantime, Defendant Evans had left to respond to another call involving the inmate who assaulted Plaintiff and the Officers. Plaintiff was returned to his cell by another, unidentified officer as Defendants Rose and Slaton were, themselves, receiving medical treatment.

When Plaintiff was returned to his cell, he continued to feel extreme pain on the left side of his face. He also claims that his eyes were burning, and his eyesight was blurry. Plaintiff noticed an odor to the substance and believes it was a type of oil. Plaintiff was able to wash his face in his cell but claims that the pain got worse. Plaintiff, and the inmate on either side of him, began yelling and kicking their cells doors to summon aid.

Defendants Evans, Nolan, Moorse and two Doe Officers responded. Defendant Evans told Plaintiff that they were there to give him a shower. Plaintiff told her, however, that he needed medical attention due to the burning in his eyes and face. Defendant Evans ordered that Defendant Nolan take Plaintiff to the healthcare unit. Once there, an unidentified Nurse irrigated Plaintiff's eyes and ears and sent him back to his cell. Plaintiff asserts that he continued to experience burning pain that evening and the following day. He complained to Defendant

Nurses Corra and Tammie who provided no treatment. Defendant Nurse Joyce, not a party, who was on duty the following morning, irrigated Plaintiff's face and ear and gave him two Ibuprofen. Plaintiff pleads that, that morning, he had asked Defendant Officer Rhoads for medical attention. It appears likely that Nurse Joyce's treatment to Plaintiff was rendered in response to Defendant Rhoads's request.

Later that day, Plaintiff asked Defendant Officer Welch to summon a crisis team. Defendant Welch called for the mental health team and Defendant Roll responded. Rather than relaying a mental health concern to here, however, Plaintiff told Defendant Roll that he needed medical treatment. Defendant Roll left to inform healthcare. About an hour later, Defendant Nurse Jade Dreiling responded. She told Plaintiff she did not find his complaints credible as the officers who had also been assaulted indicated that the assailant had thrown only water.

Plaintiff was seen by Dr. Ojelade on August 22, 2017, four days after the event. Plaintiff does not disclose any particular symptoms he was experiencing, though he alleges that he wanted to be referred to an eye doctor and to be given pain medication. Plaintiff claims that Dr. Ojelade did not examine him, but stated that looking at Plaintiff, he could see that there was nothing wrong with him. Plaintiff was returned to his cell. He does not disclose any further medical treatment requested, refused or rendered.

## ANALYSIS

Plaintiff alleges that all Defendants, including the medical Defendants who were not present at the time, are liable for failing to present the assault. He also asserts that he should not have been housed in proximity to the seriously mentally ill inmate assailant. Plaintiff does not allege, however, that any of the named Defendants were responsible for cell assignments or that any could have prevented him being in a cell block which housed a mentally ill inmate. *See*

3

*McGill v. Duckworth*, 944 F.2d 344, 348–49 (7th Cir. 1991) (plaintiffs may not "tax employees of the prison system with the effects of circumstances beyond their control."

Plaintiff cannot assert a failure to protect claim as to the majority of the Defendants as they were not present and had no opportunity to intervene prevent the occurrence. *See Watkins v. Ghosh*, No. 11- 1880, 2014 WL 840949, at *3 (N.D. Ill. Mar. 4, 2014) (for failure to intervene plaintiff must establish that the defendant had a realistic opportunity to prevent the harm and failed to do so). The Court will examine, however, whether he has a colorable claim as to Defendants Rose and Slaton.

To be liable for failure to protect, Defendants must have had "actual knowledge of impending harm" and of a "specific threat to [plaintiff's] safety." *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991). In addition, Defendants' response to the threat must have been so inadequate as to amount to "a reckless disregard for the risk and 'effectively condone[s] the attack.'" *Id.* (internal citation omitted) (quoting *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)). Here, Plaintiff alerted Defendants to the potential threat from the inmate almost contemporaneously with its occurrence. There is no inference that Defendants appreciated the risk, had an opportunity to prevent it or recklessly disregarded it. This, particularly, as Defendants Rose and Slaton were, themselves, victims of the assault.

Here, Plaintiff fails to plead facts that any Defendant, including Defendants Rose and Slaton, were aware of the risk to Plaintiff and consciously disregarded it. Plaintiff's failure to protect claim is DISMISSED in its entirety.

Plaintiff also asserts a deliberate indifference claim against Defendants Ojelade, Evans, Rose, Nolan, Slaton, Rhoads, Welch, Roll, and Nurses Tammie, Corra, Paul and Jade Dreiling and individuals identified only as John Doe #1 and 2 and Jane Doe #1. "The Eighth Amendment

safeguards the prisoner against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)(internal quotations and footnote omitted). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996).

Plaintiff fails to state a claim as to Defendant Evans who responded to the scene, wiped his face with paper towels, and sent him to the healthcare unit for treatment. As to Defendant Nolan, Plaintiff alleges only that Defendant took him to the healthcare unit when so ordered by Defendant Evens. Defendant Moorse was also present, but Plaintiff pleads nothing against him. Plaintiff's only allegation against Defendant Welch is that, when he asked Defendant to summon a crisis team, he did so. When Defendant Roll responded and learned that Plaintiff was requesting medical rather than mental health treatment, she left to secure the medical treatment. These allegations fail to allege deliberate indifference on the parts of Defendants Evans, Nolan, Moorse, Welch and Roll and they are DISMISSED.

Defendants Rose and Slaton do not appear implicated in the deliberate indifference claim as Plaintiff has not pled that he asked either for medical treatment. Plaintiff, in fact, pled that, Defendants were not present after the assault as they, themselves, were obtaining medical treatment. While Plaintiff identifies two Doe Defendants who were present when Lt. Evans offered Plaintiff a shower, he pleads nothing against them. Plaintiff also fails to plead any claims as to the Jane Doe Defendant. "Section1983 creates a cause of action based on personal liability

and predicated upon fault; thus, 'to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation.'" *Jones v. Butler,* No. 14-00846, 2014 WL 3734482, at *2 (S.D. Ill. July 29, 2014) (quoting *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). The Doe Defendants and Defendants Rose and Slaton are DISMISSED.

Plaintiff has pled that at the time he saw Defendant Ojelade, he "continued to ask for help and treatment also submit medical request to see an eye doctor/specialist and, for pain medication." He does not disclose, however, any symptoms which he related to Defendant Ojelade. When Defendant observed Plaintiff, he reportedly saw nothing wrong with him. While Plaintiff apparently wanted to be seen by an eye doctor, he does not identify any eye problems he was experiencing on that date, four days after the assault. As Plaintiff has pled seeing Dr. Ojelade on only one occasion, not disclosing any symptoms he reported to him, he fails to state a colorable deliberate indifference claim. Defendant Ojelade is DISMISSED.

Plaintiff, however, alleges that he was in pain for several days after a hot, oily substance was thrown on him. He claims that Nurse Defendants Tammie, Corra, Paul and Jade saw him during this period but were deliberately indifferent in refusing him medical treatment. These claims will proceed.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed solely on the deliberate indifference claim asserted against Defendant Nurses Tammie, Corra, Paul and Jade. Plaintiff's failure to protect claim is dismissed for failure to state a claim. Any claims not identified will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court

pursuant to Federal Rule of Civil Procedure 15. Defendants Rose, Slaton, Evans, Nolan, Moorse, Rhoads, Welch, Roll, Ojelade, John Doe #1 and #2 and Jane Doe are DISMISSED.

2. The Clerk is directed to send to each Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

3. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

4. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

5. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court, and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

6.      Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel.  Instead,  the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel.  The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7.      Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

8.      Plaintiff shall immediately notice the Court of any change in mailing address or phone number.  The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

 **1)  ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,**

 **2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.**

**LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARHSAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).**

11/1/2019                          s/Joe Billy McDade
ENTERED                          JOE BILLY McDADE
                                   UNITED STATES DISTRICT JUDGE